**UNITED STATES of America, Plaintiff,**

v.

**Louis STEINBERG, Defendant.**

**No. 71 CR 461, 72 CR 102.**

United States District Court,
N. D. Illinois, E. D.

Oct. 3, 1979.

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for plaintiff.

Paul Bradley, Chicago, Ill., for defendant.

## MEMORANDUM

LEIGHTON, District Judge.

This is a prosecution by two multi-count indictments against six defendants, including Louis Steinberg, for conspiracy, embezzlement of funds from a federally insured bank, mail fraud, and interstate transfer of stolen bank funds. The charges against five defendants were disposed of by pleas of guilty or by trial before the end of May 1973; but Steinberg was not arraigned until a little more than seven years after the first indictment was returned. He now moves to dismiss both indictments on the ground that this delay deprives him of rights secured by the constitution and laws of the United States. Therefore, the issue presented in this case is whether Steinberg can complain that the delay of more than seven years in bringing him to trial resulted in deprivation of rights secured by the Sixth Amendment and protected by the Speedy Trial Act of 1974. The material facts are not in dispute.

I.

For some time prior to 1971, Steinberg was an executive and part owner of a large number of merchandising companies situated within and outside this district. In these businesses he had a number of associates. Early in 1971, continuing into early 1972, he became the subject of criminal investigations by the March and December 1971 grand juries of this court. At the time, he lived with his family within this court's jurisdiction. On March 11 and 18, 1971, he was subpoenaed and testified before the March 1971 grand jury; thus he learned that there was an ongoing criminal investigation into his business activities, and of the possible criminal charges. Then, less than a month later, on April 7, 1971, using a

United States passport issued to him in Chicago, Steinberg arrived in Salisbury, Rhodesia. He later registered as a Rhodesian resident alien when he was issued a permit by that government on September 7, 1971. He established his domicile in Salisbury, acquired a home to which was affixed a plaque with his name on it, and he had a telephone listed in his name in the Salisbury telephone directory. He did not conceal his identity; his whereabouts in Salisbury could be easily ascertained by any casual visitor to the city.

On April 30, 1971, a 30 count indictment was returned and filed in this court charging Steinberg and three other defendants with conspiracy to defraud a federally insured national bank of funds totalling $28,033,875, with embezzlement and misapplication of bank funds totalling more than $6,000,000, with mail fraud; and with transportation in interstate commerce of $550,000 knowing the same to have been stolen, converted and taken from the bank by fraud. Notice of this indictment with request that he appear for arraignment was sent to Steinberg at his last known address, but he did not respond. A warrant issued for his arrest; and when he was sought at his home, his wife told agents of the government that her husband left the United States approximately three weeks before, and had traveled to Salisbury, Rhodesia, where he was maintaining his residence. Thus, the government learned where Steinberg was living. Then on February 16, 1972, a second indictment of eight counts was returned against him, two of his co-defendants in the earlier indictment, and two others, charging them with conspiracy to defraud the United States by impeding and defeating the collection of income taxes, and with mail fraud involving the operation of a large number of retail stores.

A short time before the latter indictment, the United States attorney for this district requested the Department of Justice to seek Steinberg's extradition from Rhodesia. This request was honored by transmittal to the Department of State of documents which would support extradition proceedings. Rhodesia, however, is not a nation with which the United States has an extradition treaty. And as a treaty and charter member of the United Nations, this country was bound by Resolution 277 of March 18, 1970, by which the Security Council condemned as illegal the proclamation of republican status by Rhodesia. Acting under Chapter 7 of the Charter, the Council decided "that Member States [of which the United States, of course, was one] shall refrain from recognizing this illegal regime [the nation of Rhodesia] or from rendering any assistance to it." The Council called "upon Member States to take appropriate measures, at the national level, to insure that any act performed by officials and institutions of the illegal regime in Southern Rhodesia shall not be accorded any recognition, official or otherwise, including judicial notice by the competent organs of their State."

Because of these obligations, the responsible officials in the Department of State did not make a formal request to the Rhodesian government for Steinberg's return, nor to Great Britain with which the United States had an extradition treaty and from which Rhodesia had illegally declared its independence. The State Department decided, instead, to make an informal inquiry through other governments concerning the possibility of obtaining Steinberg's expulsion from Rhodesian territory. Rhodesia indicated some willingness to consider the United States request made through a third government; but it attached conditions which, in the opinion of State Department officials, would have amounted to recognition of the illegal Rhodesian regime. In the view of the State Department officials involved, compliance with the suggested conditions would have violated this country's treaty obligations to the United Nations as imposed by Council Resolution 277.

Consequently, nothing else was done. Steinberg remained in Rhodesia until July 13, 1978 when he voluntarily appeared in the offices of the American Consulate General in Johannesburg, South Africa and was given a letter of identity that authorized him to travel ". . . directly from Jo-

hannesburg, South Africa via Rio to New York, New York." He arrived in New York City, was taken into custody there, and was transported to this district where, on July 18, 1978, he was arraigned and pled not guilty to the two indictments which had been on the fugitive docket of this court for a little more than seven years. He now moves to dismiss these indictments, contending that his right to a speedy public trial guaranteed by the Sixth Amendment and protected by the Speedy Trial Act of 1974 was violated by the failure of the government to obtain either his extradition or expulsion from Rhodesia so he could have been brought to trial within a reasonable time after the return of the indictments against him.

## II.

█ In making this contention, Steinberg overlooks the fact that he, knowing of the possible criminal charges against him, left the State of Illinois a short time before the first indictment in this case was returned. It is settled American law that if after the commission of a crime within a state the person who allegedly committed it leaves the state, no matter for what purpose, with what motive, or under what belief, he becomes, from the time of such leaving, within the constitution and laws of the United States, a fugitive from justice. *Appleyard v. Massachusetts*, 203 U.S. 222, 227, 27 S.Ct. 122, 51 L.Ed. 161 (1906); *see United States v. Meyering*, 54 F.2d 621 (7th Cir. 1931). This is what Steinberg became and so remained from early in April in 1971 when he left Illinois until July 18, 1978 when he was brought before this court for arraignment on the two pending indictments.

He does not claim, as did the defendant in *United States v. Judge*,[1] that he was ignorant of the indictments against him until he arrived in New York City and was arrested. He does not claim, as did the defendant in *United States v. Salzmann*,[2] that he, being indigent, was unable to fi-

nance his return to the United States from a foreign country so that he could stand trial. Nor does he claim, as did the defendant in *United States v. McConahy*,[3] that his absence from this jurisdiction was caused in whole or in part by his incarceration in the jails of a foreign government. Therefore, the delay in bringing him to trial was caused solely by his fleeing this jurisdiction and remaining unavailable until he arranged for his return from Johannesburg, South Africa.

Ignoring all of this, Steinberg argues that the Sixth Amendment to the federal constitution and the provisions of the Speedy Trial Act of 1974 required the United States government either to have obtained his expulsion from Rhodesia or secured his extradition from that country. He insists that while he lived in Rhodesia he did nothing to conceal his identity or whereabouts. He points to the fact that on several occasions he accepted service of summons in civil cases pending in at least two courts in this country; but the government never requested his return to this jurisdiction so he could speedily answer the charges against him. Steinberg contends that the government of the United States, basing its decision on pragmatic considerations of foreign policy, never made an effective request of Rhodesia for his expulsion or extradition.

The government responds with the assertion that it could not do what Steinberg claims should have been done. It points out that the United States has never recognized the legal existence of Rhodesia as a nation; and, consequently, this country did not have an extradition treaty through which it could have obtained his return to this jurisdiction. The government, however, states that despite these obstacles, it made good faith, indirect and informal diplomatic approaches to Rhodesia through another country; and from responses received, state department officials learned that Steinberg's expulsion was subject to conditions which, in their view, the United States could not

---

**1.** 425 F.Supp. 499 (D.Mass.1976).

**2.** 548 F.2d 395 (2d Cir. 1976).

**3.** 505 F.2d 770 (7th Cir. 1974).

meet without violating its treaty obligations under the United Nations charter. Because of this, nothing more was done to obtain Steinberg's return.

 In this court's judgment, these decisions by responsible agents of the government were sound. The United Nations Charter, a treaty ratified by the United States, is a part of the supreme law of this land. *Balfour, Guthrie & Co. v. United States*, 90 F.Supp. 831, 832 (N.D.Cal.1950); U. N. Charter art. 104; U.S. Const. art. 6, cl. 2. This country has a continuing obligation to observe with entire good faith and scrupulous care all of its undertakings under this treaty, including support of the resolutions adopted by the Security Council. 74 Am.Jur.2d *Treaties* § 14 (1974); 22 U.S. C.S. § 287c.

■ Of course, a treaty, either by its terms or in its application, cannot run counter to the provisions of the constitution of this country. *Geofroy v. Riggs*, 133 U.S. 258, 267, 10 S.Ct. 295, 33 L.Ed. 642 (1980); 74 Am.Jur.2d *Treaties* § 16 (1974). Therefore, the government through its officials could not choose between respecting the constitutional rights of a citizen and adhering to the provisions of a treaty. *See Reid v. Covert*, 354 U.S. 1, 16, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957); *Holmes v. Laird*, 148 U.S.App.D.C. 187, 192, 459 F.2d 1211, 1217 (D.C.Cir.), *cert. denied*, 409 U.S. 869, 93 S.Ct. 197, 34 L.Ed.2d 120 (1972); *Pierre v. Eastern Air Lines*, 152 F.Supp. 486, 488 (D.N.J.1957).

■ However, in this case, the government did not make such a choice. Steinberg was a person who after commission of crimes with which he was later charged, left the state of Illinois and took asylum in Rhodesia, a country with which the United States did not have an extradition treaty nor available third-party diplomatic channels. Nonetheless, state department officials, acting in good faith, made informal and indirect approaches to Rhodesia in their effort to obtain Steinberg's return to this jurisdiction. This was all they were obliged to do under the federal constitution and laws. In order to obtain Steinberg's return, the government was not obligated to violate either the letter or spirit of the Charter of the United Nations, a treaty that lies at the foundation of this country's foreign policy. For these reasons, Steinberg cannot complain that the delay of more than seven years in bringing him to trial, a delay caused by his flight and unavailability, results in deprivation of rights secured to him by the Sixth Amendment and protected by the Speedy Trial Act of 1974. *United States v. Cartano*, 420 F.2d 362, 364 (1st Cir.), *cert. denied*, 397 U.S. 1054, 90 S.Ct. 1398, 25 L.Ed.2d 671 (1970); *United States v. Bey*, 499 F.2d 194, 203–04 (3d Cir.), *cert. denied*, 419 U.S. 1003, 95 S.Ct. 322, 42 L.Ed.2d 278 (1974); *United States v. Judge*, 425 F.Supp. 499, 502 (D.Mass.1976). Therefore, his motion to dismiss the indictments in this case is denied.

So ordered.