**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William Graves CASTLE, Jr.,
Defendant–Appellant.**

No. 89–4898.

United States Court of Appeals,
Fifth Circuit.

July 3, 1990.

H. Gayle Marshall, Lake Charles, La., for defendant-appellant.

William J. Flanagan, Asst. U.S. Atty., Joseph S. Cage, Jr., U.S. Atty., Larry J. Regan, Asst. U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before GARZA, GARWOOD, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

William G. Castle appeals his conviction for bank fraud, claiming violation of the Speedy Trial Act and insufficiency of the evidence to support his conviction. We do not reach his insufficiency of the evidence claims, for more than seventy non-excludable days passed between his first appearance and the commencement of his trial. This violation of the Speedy Trial Act required dismissal of the indictment, and the district court's denial of Castle's motion to dismiss was error requiring us to reverse his conviction. We are convinced, however, that the dismissal should be without prejudice to the government's efforts to reindict. We remand for that purpose.

I

William G. Castle, Jr. was indicted on October 20, 1988, for attempting to defraud Calcasieu Marine National Bank in violation of 18 U.S.C. §§ 2 and 1344. Castle first appeared before the magistrate on October 26, 1988. On October 28, 1988, after a hearing, the district court ordered Castle committed to a federal facility for psychiatric evaluation to determine whether or not he was competent at the time of the alleged offense and whether he was competent to assist counsel.

Castle was awaiting transport in Lake Charles, Louisiana, and on the day the psychiatric evaluation was ordered, the Marshal's office in Shreveport sent a teletype to the Bureau of Prisons in New Orleans requesting a designation for the defendant.

After hearing nothing for twelve days, during which time the Marshal's Service did nothing else to find out where to send Castle, the Marshal's office finally called the BOP on November 9, and learned that Castle had been designated to the medical facility at Springfield, Missouri. Although BOP records indicated that the designation had been teletyped to the Marshal's office in Shreveport on November 2, the Shreveport office had no record of having received it.

On November 9, 1988, Castle was driven to New Orleans and put on board the Marshal's airlift. The airlift only has two planes, which operate along prefixed routes with prisoners boarding and deplaning along the way. Castle had to wait in New Orleans until November 14 for the next available plane, and it was not until November 19 that he arrived in Springfield.

The district court extended the time during which Castle could be evaluated to December 27, 1988. Castle left the federal correctional institute in Springfield on January 10, 1989. On January 25, 1989, a competency hearing was held and Castle was found competent to stand trial. Discovery motions were filed on February 9, 1989, and the district court ruled on these motions on March 14, 1989.

Castle filed his motion to dismiss the indictment on Speedy Trial Act grounds on April 18, 1989. The Marshal's Service presented evidence at the hearing on Castle's motion to dismiss that the airlift is used because of the high cost of alternative forms of transportation. Budget constraints prevent transporting prisoners on commercial aircraft, or by car if it is a long trip. The district court denied the motion to dismiss, on May 1, 1989, holding

> [I]t is obvious that the Marshal's Service is subject to an extreme budgetary crunch due to the Gramm–Rudman bill, and that the Marshal's Service now has two planes which take prisoners from city to city until it can get them to their destination. And the question here is, has the government overcome its burden of the fact of the presumption of unreasonableness in getting Mr. Castle from

Lake Charles, Louisiana to Springfield Missouri. In view of the evidence and the testimony, the court finds that the motion should be denied to dismiss the indictment because under all of the circumstances that are shown here, and due to the Gramm–Rudman bill, the defendant was finally taken to Springfield, and I will deny the motion to dismiss.

Following the Speedy Trial hearing, Castle was tried to a jury on May 1, 1989, and found guilty. He appeals his conviction, claiming violation of the Speedy Trial Act and insufficiency of the evidence.

## II

The Speedy Trial Act, 18 U.S.C. § 3161, provides in part:

> (c)(1) In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which said charge is pending, whichever date last occurs.

There are various periods of time which are excludable from the computation of this 70 days, however, as found in § 3161(h), which provides in pertinent part:

> The following periods of delay shall be excluded in computing the time within which an information or indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
>
> > (A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;
> >
> > \*　　\*　　\*　　\*　　\*　　\*
> >
> > (F) delay resulting from any pre-trial motion, from the filing of the motion through the conclusion of the

hearing on, or other prompt disposition of, such motion;

\* \* \* \* \* \*

(H) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date and order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable;

\* \* \* \* \* \*

■Castle first appeared before a judicial officer of the court on October 26, 1988, thus triggering the 70 day period. There were 186 days until the trial commenced on May 1, 1989, but there were a number of periods of time which were excludable from the total number of days:

(a) 90 days between the order for psychiatric examination on October 28, 1988, and the date of the competency hearing on January 25, 1989, pursuant to 18 U.S.C. § 3161(h)(1)(A);

(b) 34 days between the filing of discovery motions on February 9, 1989 and the court's ruling on March 14, 1989, pursuant to 18 U.S.C. § 3161(h)(1)(F).

This would make the non-excludable time between appearance and trial only 62 days, except the entire time between the order for psychiatric examination and the date of the competency hearing cannot be excluded, for under § 3161(h)(1)(H) any time over 10 days spent transporting the defendant to his psychiatric examination is considered unreasonable and should not be excluded. The time from the order until Castle arrived in Springfield was 22 days, so 12 days of the 89 days for psychiatric examination should not be excluded. This makes the non-excludable time between appearance and trial 74 days, and therefore the indictment should have been dismissed.

The government argued, and the district court accepted, that the presumption of unreasonableness in § 3161(h)(1)(H) is a rebuttable presumption. The district court found that this presumption was rebutted because the delay in transporting Castle was caused by the budgetary constraints of the Gramm–Rudman bill. We disagree, for two reasons.

■ First, the record does not support that the delay was caused by the Gramm–Rudman budgetary constraints. The airlift may have taken ten days to transport Castle, and it may be a system required by budgetary constraints, but that does not explain the initial twelve day delay from the order to the first attempt to transport Castle anywhere. The Speedy Trial Act gives ten days for travel, yet the Marshal's office did not even call to find out where Castle should be sent until the twelfth day after the order. This seems to have been ordinary negligence, and not any sort of excusable neglect. Moreover, there is no direct link between the ten days taken to transport Castle on the airlift and the Gramm–Rudman bill. The Marshal's Service will always face budgetary constraints, and this delay is but a symptom of that general problem. While accepting that the Marshal's Service has budgetary constraints imposed by Congress, prisoners have Speedy Trial Rights also granted by Congress.

■ Second, we cannot accept the government's argument that the presumption of unreasonableness can be rebutted by a showing of diligent effort. The government points to the legislative history of the Speedy Trial Act for the general proposition that the amendments of 1979 were intended to make the Act more flexible, and that interpreting the presumption of unreasonableness for travel time over 10 days as rebuttable is in keeping with this flexibility. The Department of Justice submitted a bill that sought to enlarge the final time limits of the 1974 Act and retain only several narrowly defined exclusions that would be strictly construed. The Judiciary Committee found this proposal to advocate a "fundamental policy shift in the Act," and recommended deferral of final implementation of the dismissal sanction. The Judiciary Committee expressed concern "that the principal actors in the Feder-

al criminal justice system [were] ... interpreting ... the Act in an unnecessarily inflexible manner." S.Rep. No. 212, 96th Cong., 1st Sess. 18 (1979), U.S.Code Cong. & Admin.News 1979, 805. The Committee did agree, however, that certain provisions regarding excludable delay required legislative clarification, and the clarifying amendments included § 3161(h)(1)(H). The Speedy Trial Act amendments specifically indicate that anything over ten days in transport is presumptively unreasonable, and in enacting this law Congress took into account that there would be institutional delays. The setting of ten days as presumptively unreasonable seems to have been a compromise, with a deliberate limitation on flexibility in this section of the Act, rather than leaving transportation time to be excluded under some general standard of reasonableness. Under the government's suggestion of rebutting the presumption for diligent attempts to transport the prisoner, particularly if we see the facts of this case as comprising diligence, we would essentially be allowing any amount of time in transport as long as the government could show that it was not acting unreasonably. If we were to accept the government's definition of diligence, anything other than affirmative wrongdoing would amount to diligent effort and would rebut the presumption of unreasonableness for transport time over ten days. This definition is clearly unacceptable in light of the goals of the Speedy Trial Act. Congress rejected this standard when it enacted § 3161(h)(1)(H) with its presumption of unreasonableness after ten days.

The Ninth Circuit has not accepted similar arguments by the government. In *United States v. Taylor*, 821 F.2d 1377 (9th Cir.1987), *rev'd on other grounds*, 487 U.S. 326, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988), the court stated that "delays [in transportation] to accommodate the [government], in its desire to effect economical transportation of prisoners in larger groups, are not excludable under the Act." *Id.* at 1384. The Ninth Circuit relied in part on the House Report on the Speedy Trial Act legislation, wherein the committee rejected the argument that additional time should be allowed to permit economical transportation of prisoners, stating:

> The Committee cannot conclude that inconvenience to the United States marshals or the minimal expense of transporting prisoners is an excuse for delaying the arraignment of a defendant.

*Taylor*, 821 F.2d at 1384 n. 10 (quoting H.Rep. No. 1508, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 7401, 7423–24. Similarly, in *United States v. Jervey*, 630 F.Supp. 695 (S.D.N.Y.1986), the district court held that the presumption of § 3161(h)(1)(H) applies "unless some extraordinary event occurred in the case to make compliance with the directions of Congress unfeasible.... [O]rdinary institutionalized delay is not an excuse." *Id.* at 697. We find this latter approach to be the better one.

The government has not pointed to any extraordinary event or circumstance to rebut the presumption that time over ten days spent transporting Castle to his psychiatric evaluation was unreasonable. Therefore, twelve of the 22 days transport time are not excludable from the computation of the time between his first appearance and the commencement of trial. His trial commenced more than seventy days after his first appearance, and Castle, therefore, was tried in violation of the Speedy Trial Act, necessitating the reversal of his conviction.

Castle also challenged his conviction on lack of evidence grounds. Because we decide this case on the Speedy Trial Act issue we need not reach the issue of the sufficiency of the evidence.

■ On remand, the district court should dismiss the indictment without prejudice. 18 U.S.C. § 3162(a)(2). Bank fraud is a serious offense, a felony carrying a maximum term of imprisonment of twenty years. *See, e.g., United States v. Hawthorne*, 705 F.2d 258 (7th Cir.1983) (unlawful possession of a stolen check, carrying a maximum term of five years, held serious for Speedy Trial Act purposes). The delay was brief, and if not unavoidable at least inadvertent. There is no indication that the

government delayed in order to prejudice Castle, a factor counseling against a dismissal with prejudice. *See United States v. Thurlow,* 710 F.Supp. 380 (D.Me.1989). Finally, as the Supreme Court has noted, a dismissal with prejudice will of course always send a stronger message, and is more likely to induce salutary changes in procedures, thereby reducing pretrial delays. *United States v. Taylor,* 108 S.Ct. at 2413, 2422. But dismissal without prejudice is not an ineffectual remedy, forcing the government to reindict in the face of statute of limitation pressures, among other things. *Id.* In these circumstances, we think allowing the government to reprosecute will have the more positive effect on the administration of justice, and of the Speedy Trial Act.

REVERSED and REMANDED.