UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
         *Plaintiff-Appellee,*

v.                                        No. 00-4897

MICHAEL DONALD WILLIAMS,
         *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CR-99-32)

Argued: December 6, 2001

Decided: January 16, 2002

Before LUTTIG, KING, and GREGORY, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** George Alan DuBois, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant. Felice McConnell Corpening, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Raleigh, North Carolina, for Appellant. John Stuart Bruce, Interim United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Michael Donald Williams appeals from his sentence of thirty months of imprisonment imposed in the Eastern District of North Carolina. His conviction and sentence resulted from his guilty plea for a single count of impersonating a federal officer, in violation of 18 U.S.C. § 912. Williams maintains on appeal that the district court, in imposing sentence, committed reversible error when it applied an upward 2-level adjustment for abuse of a position of trust, pursuant to United States Sentencing Commission, *Guidelines Manual* § 3B1.3. (Nov. 1998).[1] As explained below, we conclude that this contention has merit, and we vacate and remand.

### I.

Williams was charged on March 16, 1999, in a single-count indictment, with violating 18 U.S.C. § 912 by falsely assuming and pretending to be a United States Marshal,[2] and thereby obtaining $700 in United States currency.[3] On July 17, 2000, without any kind of plea

---

[1] We refer to the United States Sentencing Commission, *Guidelines Manual*, as the "Guidelines" or "USSG."

[2] Section 912 of Title 18 of the United States Code provides, in pertinent part, that:

> [w]hoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any . . . agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money . . . shall be (punished according to law).

[3] The indictment against Williams, returned on March 16, 1999, provides that:

> [b]etween May, 1997 and July, 1997, in the Eastern District of North Carolina, the defendant, MICHAEL DONALD WIL-

agreement or arrangement with the Government, Williams entered a plea of guilty to the indictment. The factual basis for Williams's plea was simple: Williams had exhibited a badge to the victim of his crime, Sherry Ewing; he had falsely advised her he was a United States Marshal; and he had claimed he could obtain a Government-seized Lexus automobile for her. Thereafter, Ewing paid Williams $700 in cash for purchase of the Lexus, and Williams falsely promised to deliver the luxury vehicle to her. Williams, however, failed to deliver the Lexus to Ewing, and he of course kept the money.

A Presentence Investigation Report ("PSR") was completed prior to Williams's sentencing, and the Government made no objections to its contents. Williams, however, filed nine objections to the PSR, including an assertion that he had not represented to Ewing, in connection with his criminal activity, that he was acting on behalf of a Government agency.

At his November 27, 2000, sentencing proceeding conducted in the Eastern District of North Carolina, Williams orally presented two objections to the PSR: (1) he maintained the objection that the PSR incorrectly concluded that he was acting on behalf of the Government when he advised Ewing that he could purchase the Lexus for her, and (2) Williams asserted, for the first time, that the PSR erroneously concluded that he had abused a position of private or public trust. The district court overruled all of Williams's objections, and it proceeded to impose sentence.

In determining the Guideline on which Williams's sentence should be based, the court analyzed the provisions of both USSG §§ 2J1.4 (impersonation) and 2F1.1 (fraud and deceit). The court first looked to § 2J1.4, which fixes the base level offense at 6.[4] This Guideline,

---

LIAMS, did falsely assume and pretend to be an officer and employee of the United States acting under the authority thereof, that is a United States Marshal, and in such assumed and pretended character did obtain a thing of value, in that he obtained the sum of $700.00 in United States currency in violation of Title 18, United States Code, Section 912.

[4]USSG § 2J1.4 instructs the sentencing court, in relevant part, that "[i]f the impersonation was to facilitate another offense, apply the guideline for an attempt to commit that offense, if the resulting offense level is greater than the offense level determined above."

however, requires cross-reference to other provisions of the Guide-lines, if (1) the impersonation was to facilitate another offense, and (2) application of the cross-referenced Guideline would result in an offense level greater than 6. USSG § 2J1.4. As such, because Williams's impersonation of a federal Marshal facilitated his commission of a fraud, the court cross-referenced § 2F1.1, the Guideline for fraud and deceit.[5] Applying that Guideline, the court calculated an offense level of 10, by: (1) starting with § 2F1.1(a)'s base offense level of 6; (2) adding the 2-level enhancement for more than minimal planning, required by § 2F1.1(b)(2); and (3) adding another 2-level enhance-ment for misrepresenting that the defendant was acting on behalf of a Government agency, pursuant to § 2F1.1(b)(4).

Because the offense level of 10 calculated under § 2F1.1 was greater than the offense level of 6 arrived at by the application of § 2J1.4, the court, pursuant to § 2J1.4, based Williams's sentence on the Guideline resulting in the higher offense level, i.e., § 2F1.1 (fraud and deceit). The court then added an upward 2-level adjustment for abuse of a position of trust, pursuant to § 3B1.3,[6] and it awarded Williams a downward 2-level adjustment for acceptance of responsibility, as provided for in § 3E1.1.[7] Thus, after the court considered each of

---

[5]USSG § 2F1.1(a), like § 2J1.4, provides for a base offense level of 6. Section 2F1.1(b), in pertinent part, instructs that:

> (2)   If the offense involved (A) more than minimal planning . . ., increase by 2 levels.
>
> . . .
>
> (4)   If the offense involved (A) a misrepresentation that the defendant was acting on behalf of a . . . government agency . . ., increase by 2 levels.

[6]USSG § 3B1.3 provides in relevant part that:

> If the defendant abused a position of public or private trust . . ., in a manner that significantly facilitated the commission . . . of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust . . . is included in the base offense level or specific offense characteristic.

[7]USSG § 3E1.1(a) provides that "[i]f the defendant clearly demon-strates acceptance of responsibility for his offense, decrease the offense level by 2 levels."

these adjustments, it concluded that Williams had an offense level of 10. The court also found that Williams had a criminal history level of VI, and that his appropriate sentencing range was imprisonment for a period between twenty-four and thirty months. The court then sentenced Williams to prison for a period of thirty months.

Williams thereafter filed this appeal, challenging only his sentence. He maintains that it must be vacated and that he is entitled to be resentenced because the court erred in applying the upward 2-level adjustment for abuse of a position of trust, pursuant to § 3B1.3. More specifically, he asserts that, had his sentence been properly calculated, his maximum term of imprisonment could not have exceeded twenty-four months. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo questions of law relating to interpretation of the Guidelines. *United States v. Montgomery*, 262 F.3d 233, 250 (4th Cir. 2001). On the other hand, we review for clear error factual determinations of a district court under the Guidelines. *Id.* at 249-50. When a defendant fails to raise an issue in the district court, our review is for plain error. *United States v. Olano*, 507 U.S. 725, 731-32 (1993).

## III.

On appeal, Williams maintains that his sentence should be vacated because the court erred in applying an upward 2-level adjustment for abuse of a position of trust, pursuant to § 3B1.3. Williams supports this contention with the following three points: (1) he did not occupy a position of trust with respect to Ewing; (2) if he held a position of trust with respect to Ewing, he did not abuse that trust when he represented that he could obtain for her the Government-seized Lexus; and (3) the court engaged in impermissible double-counting when it based his sentence on § 2F1.1 (fraud and deceit), and also applied an upward adjustment for abuse of a position of trust, pursuant to § 3B1.3.

## A.

First of all, Williams asserts that he did not occupy a position of trust with respect to Ewing because he was not actually a United

States Marshal. His contention on this point is devoid of merit. The Commentary to the Guidelines, which we are bound to apply, *see Stinson v. United States*, 508 U.S. 36, 42-44 (1993), provides that a § 3B1.3 adjustment "applies in a case in which the defendant provides sufficient indicia to the victim that the defendant legitimately holds a position of private or public trust when, in fact, the defendant does not." USSG § 3B1.3, comment (n.2). Thus, the critical question is whether the facts show that Williams gave Ewing sufficient indicia that he was a federal Marshal, not whether Williams was actually a federal Marshal.

The district court found as a fact that Williams exhibited a badge to Ewing in connection with his representation that he was a United States Marshal, which, coupled with his oral representations, constituted sufficient indicia that Williams was such an official. Morever, it is well-settled that law enforcement officers occupy positions of public trust. *United States v. Williamson*, 53 F.3d 1500, 1525 (10th Cir. 1995); *United States v. Rehal*, 940 F.2d 1, 5 (1st Cir. 1991). Thus, the court did not err in concluding that Williams occupied a position of trust vis-a-vis Ewing.

B.

Next, Williams contends that, even if he occupied a position of trust with respect to Ewing, he did not abuse this trust. He maintains that anyone can purchase a Government-seized vehicle, and therefore he was not abusing any position of trust when he advised Ewing he could purchase the Government-seized Lexus for her. Although the Government asserts that Williams did not raise this issue in the district court, we cannot agree. At his sentencing hearing, Williams maintained that the PSR incorrectly concluded that he was acting on behalf of the Government when he advised Ewing that he could purchase the Lexus for her. The court overruled Williams's objection, thus preserving the issue for our review. Moreover, because his contention on this point involves a question of the court's interpretation of the Guidelines, we review it de novo. *United States v. Montgomery*, 262 F.3d 233, 250 (4th Cir. 2001).

Section 3B1.3's Commentary provides that "[f]or this adjustment to apply, the position of public or private trust must have contributed

in some significant way to facilitating the commission . . . of the offense." USSG § 3B1.3, comment (n.1). In this case, Williams advised Ewing that he was a federal Marshal, and at the same time informed her that he could obtain for her the Lexus vehicle. From Ewing's perspective, it was Williams's status as a federal Marshal that permitted him to purchase the Lexus. Thus, Williams obtained the cash sum of $700 from Ewing, at least in part, by exploiting the trust she placed in public officials. As such, Williams's criminal activity involved abuse of a position of trust, and the district court did not err in applying the § 3B1.3 2-level upward adjustment on this basis.

## C.

Finally, Williams contends that the district court engaged in impermissible double-counting when it based his sentence on § 2F1.1 and then also applied an adjustment for abuse of a position of trust, pursuant to § 3B1.3. We have recognized that "[i]f conduct falls within the applicable definitions [of the Guidelines], then it is appropriate to increase the offense level for each enhancement." *United States v. Curtis*, 934 F.2d 553, 556 (4th Cir. 1991). In reaching this conclusion, we determined that the absence of a double-counting prohibition in the Guidelines was by design, because the "Guidelines are explicit when double counting is forbidden." *Id.* Thus, we allow double-counting under the Guidelines "[u]nless a guideline provision expressly prohibits consideration of a factor previously used in applying another guideline section." *United States v. Blake*, 81 F.3d 498, 505 (4th Cir. 1996).

Williams correctly asserts on appeal that § 3B1.3 expressly prohibits double-counting. USSG § 3B1.3 ("[T]his adjustment *may not* be employed if an abuse of trust . . . is included in the base offense level or specific offense characteristic.") (emphasis added). The court based Williams's sentence on the provisions of § 2F1.1 (fraud and deceit), and Williams received a 2-level enhancement, pursuant to § 2F1.1(b)(4), for misrepresenting that he was acting on behalf of a Government agency when he accepted money from Ewing. The court then made an 2-level upward adjustment pursuant to § 3B1.3 for abuse of a position of trust. Williams's offense, however, involved a single misrepresentation to a single person; he held no position of

public or private trust with respect to Ewing other than representing himself to be a federal Marshal. Thus, the court necessarily based both the § 2F1.1(b)(4) 2-level enhancement (misrepresentation) and the § 3B1.3 upward 2-level adjustment (abuse of position of trust) on the same abuse of trust, which resulted in impermissible double-counting in the calculation of Williams's offense level.[8]

Williams, however, failed to raise the issue of impermissible double-counting before the district court. Thus, our review of his contention on this point must be for plain error. *United States v. Olano*, 507 U.S. 725, 731-32 (1993). We can only notice such an error if the defendant demonstrates that (1) an error occurred, (2) it was plain, and (3) it was material or affected the defendant's substantial rights. *Id.* at 732. Even if these three conditions are satisfied, we exercise our discretion to correct plain error only when it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 732.

Applying the plain error standard mandated by *Olano*, there was error in the district court's application to Williams of both the § 2F1.1(b)(4) 2-level enhancement and the § 3B1.3 2-level upward adjustment. Under *Olano*, plain error occurs when the error is "clear" or "obvious." *See United States v. Promise*, 255 F.3d 150, 160 (2001) (en banc) (citing *Olano*, 507 U.S. at 734). We have recognized that "[a]n error is clear or obvious when the settled law of the Supreme Court or this circuit establishes that an error has occurred." *Id.* (internal quotation and citation omitted). In this case, the double-counting

---

[8]The Government maintains that the district court did not engage in double-counting because the § 2F1.1(b)(4) enhancement and the § 3B1.3 upward adjustment each capture different aspects of Williams's criminal conduct. Specifically, it contends that the § 2F1.1(b)(4) enhancement pertains to "the harm that accrues when a defendant exploits a victim's trust in a government or charitable organization," while, on the other hand, the § 3B1.3 upward adjustment addresses the "harm that arises when an individual who holds (or pretends to hold) a position of trust uses that status to facilitate the commission of his crime." This distinction, however, is undermined by the specific provisions of § 3B1.3. The application of § 3B1.3 is not based solely on the type of harm a defendant's conduct produces; instead, it is based on a "defendant abus[ing] a position of public or private trust." USSG § 3B1.3.

error is plain because: (1) we prohibit application of a Guideline provision that expressly precludes consideration of a factor previously used in applying another Guideline; (2) § 3B1.3 contains such a prohibition, by forbidding the application of the upward adjustment "if an abuse of trust . . . is included in the base offense level or specific offense characteristic" of the applicable Guideline; and (3) the applicable Guideline, § 2F1.1, contains a specific offense characteristic for abuse of trust, i.e., a misrepresentation that the defendant was acting on behalf of a Government agency.

Turning to the third prong of *Olano*, Williams has demonstrated that the double-counting error was plain, and that it affected his substantial rights, because he was "sentenced at a more severe guideline range." *See United States v. Ford*, 88 F.3d 1350, 1356 (4th Cir. 1996) (citing *United States v. Robinson*, 20 F.3d 270, 273 (7th Cir. 1994) ("A sentence based on an incorrect guideline range constitutes an error affecting substantial rights and can thus constitute plain error.")); *see also United States v. Cotton*, 261 F.3d 397, 406 (4th Cir. 2001); *Promise*, 255 F.3d at 150 (en banc). Finally, under *Olano*, we should exercise our discretion to correct this error. As Judge Russell properly observed in our *Ford* opinion, "sentencing a defendant at the wrong guideline range seriously affects the fairness, integrity, and public reputation of the judicial proceedings." *Ford*, 88 F.3d at 1356. When Williams's sentence is properly calculated, the appropriate sentencing range is imprisonment for eighteen to twenty-four months. Williams is currently serving a term of thirty months — six months longer than his maximum permissible sentence under the Guidelines. And, as Judge Russell succinctly stated, "[n]o court of justice would require a man to serve . . . undeserved years in prison when it knows that the sentence is improper." *Id.*

## IV.

Accordingly, Williams's sentence must be vacated, and we remand for appropriate resentencing.

*VACATED AND REMANDED*