# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 24, 2009

No. 07-51442

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

WILLIE CLARK, JR

Defendant-Appellant

Appeals from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, GARZA, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

Defendant-Appellant Willie Clark, Jr. ("Clark") appeals his convictions on multiple counts of willfully aiding and assisting the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2), and presenting false claims for tax refunds, in violation of 18 U.S.C. § 287. He asserts that (1) the district court should have dismissed his indictment with prejudice for violation of the Speedy Trial Act, (2) there is insufficient evidence to support the jury's guilty verdict, and (3) the district court abused its discretion by admitting certain evidence. For the following reasons, we AFFIRM Clark's convictions.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A.    Factual Background

In this tax fraud case, a jury found Clark guilty of preparing fraudulent tax returns for fifteen taxpayers in exchange for a fixed fee and percentage of the refund obtained. Clark's actions with respect to each of the fifteen taxpayers were remarkably similar. We describe Clark's interactions with three representative taxpayers.

### 1.    Taxpayer McDonald

Clark met Taxpayer McDonald ("McDonald") in a gym locker room in early 2000. After discussing McDonald's tax situation, Clark gave McDonald his business card, led him to believe that he was a "competent" and "experienced" tax preparer, and offered to prepare his federal tax return in exchange for a set fee plus a percentage of his tax refund. McDonald gave Clark all of his and his then-wife's financial documents and paid Clark's fee. Clark then gave McDonald specific tax advice on various tax topics and informed McDonald that he could file amended returns for prior years for him to obtain additional refunds. Clark prepared 2000 and amended 1999 returns for McDonald. On the 1999 return, Clark accurately reported McDonald's income but falsely listed a business loss of approximately $69,000, rendering his taxable income $0. As a result, McDonald received a refund of $4,200, the entire amount of his federal withholding. Clark did not indicate that he was the "paid preparer" of the return.

Sometime before 2001, the IRS informed McDonald that it would audit his 1999 return. McDonald called Clark to seek his advice. Clark responded by telling McDonald that he would be able to "hold off the audit" if he amended his 1999 return, and Clark filed the amendment.

## 2.    Taxpayer Myers

In 1999, Clark met with Taxpayer Myers ("Myers"), a self-employed plumber, to prepare his 1999 federal tax return. Clark provided Myers with a business card that described Clark as a "PARALEGAL & TAX CONSULTANT" and Chief Executive of "The TAX PEOPLE," and Clark further described himself as a former IRS agent. Myers paid Clark a fixed fee and, at Clark's request, signed a power of attorney. Clark advised Myers on various tax issues.

When Clark presented Myers his completed 1999 return, Myers noticed that, although the return accurately listed his employment earnings, it falsely reported his filing status and reflected a "totally false" business loss of approximately $145,000. Myers did not provide Clark with any documentation that could support such a loss and told Clark that it was "pretty bogus." Clark, however, assured Myers that he knew "the in[s] and outs," that "[w]e'll send it in and you won't have to worry about no taxes, you know," and that "people in business shouldn't have to be paying all these taxes." As a result of Clark's filing, Myers reported taxable income of $0. Clark later prepared Myers's 2000 return, which was similarly false.

## 3.    Taxpayers Mr. and Mrs. Halsell

Clark met with Taxpayers Mr. and Mrs. Halsell (the "Halsells") and explained to them that he had "special knowledge of doing the taxes so that people can get what was owed to them that the Government doesn't tell them." He gave them references and showed them prior returns on which he had obtained "substantial" refunds. The Halsells provided Clark with their tax documents and agreed to pay his fee and a percentage of their refund, and Clark then told them that he would return home to "input [their information] into a special computer that nobody else has." Clark also had the Halsells sign a power of attorney and blank tax forms.

3

Clark subsequently prepared the Halsells' 2000 return and electronically filed it with the IRS without ever showing it to them. The return accurately listed their wages but falsely reported a business loss of approximately $109,000. This rendered the Halsells' taxable income $0 and resulted in a refund of approximately $5,500. Notably, the Halsells never provided Clark with any information that could support the claimed business loss. Clark further prepared amended returns for the Halsells for 1998 and 1999, "totally wiping out" their previously reported taxable income with false business losses.

### 4. The Investigation

Beginning in 2000, the IRS contacted each of the fifteen taxpayers for whom Clark had prepared returns and informed them that it would be auditing their returns. Each attempted to contact Clark to seek his advice as to how to proceed. However, Clark refused to return their calls and engaged in "stalling tactics." He also refused to return their financial records to them.

In May 2001, IRS criminal investigators began to look into Clark's alleged fraudulent activities. During the investigation, agents searched Clark's trash. The search revealed, inter alia: business cards describing Clark as a "tax consultant" and "paralegal" who offered "tax advice" and "tax preparation" for "business & individual returns" and that described Clark as the owner of his business; numerous taxpayer documents and records, including the Halsells' electronic filing forms and Myers's wife's unfiled separate return; file folders with the names of various taxpayers; a notice from the IRS to another of the fifteen taxpayers; and copies of processed checks payable to Clark that were drawn on two of the taxpayers' bank accounts. Notwithstanding this evidence, Clark denied preparing any tax returns or knowing any of these people. Following audits, the IRS determined that all fifteen taxpayers owed additional taxes.

## B.    Procedural History

This case followed a long, tortured path from indictment to eventual conviction, due almost entirely to Clark's requests for continuances and new counsel.  Because of its importance to Clark's Speedy Trial Act claim, we detail this procedural history at some length.

On March 16, 2005, a grand jury indicted Clark on five counts of willfully aiding and assisting the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2), and five counts of presenting false claims for tax refunds, in violation of 18 U.S.C. § 287.  Forty-eight days later, on May 4, 2005, Clark filed the first of five unopposed motions for continuances, resulting in delays that were excludable from Speedy Trial Act calculations from May 4, 2005, to February 6, 2006.  After two non-excludable days elapsed, the court—again at Clark's request—granted two additional continuances, resulting in excludable delays from February 8, 2006, to May 22, 2006.  For each of the seven continuances, the court expressly found that "the interest of justice" necessitated the continuance. One of these continuance requests resulted from Clark's back surgery, and defense counsel Jack Carter ("Carter") requested the others to peruse the discovery, prepare for trial, and discuss possible pleas with the government because he felt he had an ethical obligation to present such an option to his client.

On May 2, 2006, Clark filed a pro se motion to dismiss his indictment with prejudice for violation of the Speedy Trial Act, to dismiss his counsel, and to be appointed new counsel.  The court denied the motion on May 25, 2006.

On May 8, 2006, the government moved for a continuance because the May 22, 2006 rescheduled trial date conflicted with the prosecutor's daughter's graduation from the U.S. Air Force Academy.  The court granted the continuance "in the interest of justice" and set the trial for July 17, 2006.

On June 27, 2006, the government sought a second continuance. Government counsel explained that the July 17, 2006 rescheduled trial date conflicted with another trial that government counsel was prosecuting in another city and that continuity of counsel was extremely important in the case because it involved complex evidentiary and proof issues. The court once again continued the trial, ultimately setting it for January 29, 2007. Its order did not expressly note that the continuance was "in the interest of justice."

On January 5, 2007, Clark filed a second pro se motion to dismiss his attorney and request that the court appoint him new counsel, and on January 18, 2007, he again filed a pro se motion to dismiss on Speedy Trial Act grounds, which the court denied. On January 22, 2007, Clark's attorney, Jack Carter, moved to withdraw as counsel, citing a "total lack of communication[,] preventing an adequate defense," following Clark's repeated motions to dismiss him as counsel. The court permitted Carter to withdraw and appointed Albert Rodriguez as new counsel. It reset the trial for March 19, 2007.

Defendant filed a pro se interlocutory appeal of the court's denial of his motion to dismiss, which this court dismissed for lack of jurisdiction. *See United States v. Clark*, No. 07-50273 (5th Cir. Apr. 6, 2007). While the interlocutory appeal was pending, the district court permitted Rodriguez to withdraw for medical reasons and appointed Charles Muller as defense counsel. The court reset the trial for June 4, 2007.

On April 23, 2007, defense counsel filed another motion to dismiss the indictment with prejudice on Speedy Trial Act grounds. One week later, on May 2, Clark, pro se, moved to dismiss his indictment based on ineffective assistance of counsel. Muller moved to withdraw the following day, citing "conflicts" that made representation "impossible."

On May 15, 2007, the district court held a hearing on Clark's Speedy Trial Act motion. It noted that it would be "very reluctant to dismiss [the indictment]

with prejudice in light of the fact that [it saw] absolutely no impropriety in the way the Government has tried to handle this matter" and that Clark bore responsibility for some of the delay. The court specifically noted Clark's "unfortunate struggles with his o[wn] mental health" and its difficulty "find[ing] a lawyer to represent [him] through these episodes." It further explained,

> [W]hat I have before me is a case that's being initially handled by two outstanding lawyers, Mr. Carter for the defendant, Mr. Harris for the Government. It is the practice in this jurisdiction for lawyers to work together. It's the practice of lawyers to try to make sure that no case is prematurely pushed to trial while there are matters that need to be considered. You know, it would really, to me, be unfortunate if the kind of professional courtesies that were shown by attorneys to each other and which make the court system operate in a good way, if those courtesies lead to the dismissal of cases that at least need to be looked at by juries.

The government and the court expressed a willingness to move up the trial date to the following week, but Clark declined.

On June 6, 2007, the court dismissed the indictment on Speedy Trial Act grounds because of its "uncertain[ty] that the June 2006 Order sufficiently stopped the speedy trial clock." The court determined, however, after balancing the required statutory factors, *see* 18 U.S.C. § 3162(a)(2), that the dismissal should be without prejudice.

On July 25, 2007, a grand jury re-indicted Clark for the same offenses. The court denied his subsequent motion to dismiss, in which Clark asserted that the court should have previously dismissed his indictment with prejudice for violation of the Speedy Trial Act. An eight-day jury trial commenced on October 29, 2007, and the jury found Clark guilty on November 7, 2007. The court sentenced Clark to concurrent terms of 36- and 37-months' imprisonment. Following various post-trial motions, Clark timely appealed.

## II. JURISDICTION

The district court had jurisdiction over this case because Clark was charged with violations of federal law. *See* 18 U.S.C. § 3231. We have jurisdiction over Clark's appeal from the final judgment of the district court. *See* 28 U.S.C. § 1291; *see also* 18 U.S.C. § 3724.

## III. DISCUSSION

### A.    Speedy Trial Act Claim

Clark first asserts that the district court abused its discretion when it dismissed his original indictment for violation of the Speedy Trial Act, 18 U.S.C. §§ 3152-3174, without prejudice. He contends that the court improperly weighed the factors relevant to the decision to dismiss with or without prejudice for violation of the Act.

#### 1.    Standard of Review

We "review a district court's decision to dismiss an indictment without prejudice for noncompliance with the Speedy Trial Act for an abuse of discretion." *United States v. Blevins*, 142 F.3d 223, 225 (5th Cir. 1998) (citing *United States v. Taylor*, 487 U.S. 326, 342-43 (1988)). "[W]hen the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Taylor*, 487 U.S. at 337; *United States v. Cobb*, 975 F.2d 152, 157 (5th Cir. 1992). "The defendant has the burden of proving that dismissal of his case pursuant to [a balancing of the statutory factors] is appropriate." *Blevins*, 142 F.2d at 225.

#### 2.    Analysis

The Speedy Trial Act provides that if a defendant who enters a plea of "not guilty" is not brought to trial within seventy days from the filing date of his indictment, the indictment shall be dismissed on the defendant's motion. 18 U.S.C. §§ 3161(c)(1), 3162(a)(2). Such dismissal may be with or without

prejudice; "[a] district court is not required to dismiss an indictment with prejudice for every violation of the Speedy Trial Act." *Blevins*, 142 F.3d at 225; *accord Taylor*, 487 U.S. at 342. "[T]he decision whether to dismiss a complaint under the Speedy Trial Act with or without prejudice is 'entrusted to the sound discretion of the district judge and . . . no preference is accorded to either kind of dismissal.'" *United States v. Melguizo*, 824 F.2d 370, 371 (5th Cir. 1987) (quoting *United States v. Salgado-Hernandez*, 790 F.2d 1265, 1267 (5th Cir. 1986)) (omission in *Melguizo*). We have explained that "[a]lthough not as harsh a sanction as dismissal with prejudice, dismissal without prejudice is meaningful because it, *inter alia*, forces the Government to obtain a new indictment if it decides to reprosecute as well as exposes the prosecution to dismissal on statute of limitations grounds." *Blevins*, 142 F.3d at 225.

"In determining whether a dismissal of an indictment for noncompliance with the Speedy Trial Act should be with or without prejudice, the district court at least must consider (1) the seriousness of the offense, (2) the facts and circumstances of the case which led to the dismissal, and (3) the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice." *Id.* (citing 18 U.S.C. § 3162(a)(2)).

### a. Factor One: Seriousness of the Offense

Clark's sole argument that the first factor—the seriousness of the offense—weighs in favor of dismissal with prejudice is that his conduct "is less serious than other tax related matters which have been prosecuted in the Federal Courts." He contends that the seriousness of his alleged crime is limited because the tax loss to the government was only $80,601, whereas other frauds have resulted in millions or billions of dollars in losses to the government. Moreover, he avers that the span of over a year during which he allegedly perpetrated his frauds is not significant because tax season is limited and returns are prepared only once a year.

9

We conclude, however, that the district court did not abuse its discretion in finding that Clark's crime was serious enough to favor dismissing without prejudice. The court noted that Clark, charged with ten counts of felony tax fraud, conceded that his charged offenses are serious, and it considered that "various courts have classified nonviolent crimes involving mendacity as serious offenses for speedy trial purposes."[1] The court correctly recognized that even though some crimes may be more serious than Clark's criminal conduct, this does not require a finding that Clark's fraud was not serious. As the Sixth Circuit explained in another tax fraud case,

> While a primary method of judging the seriousness of an offense is by comparing it to other crimes, that does not mean that a mechanical test based upon the Guidelines must be used to label an offense "serious" or "not serious." Rather, the Speedy Trial Act's requirement that courts must consider "the seriousness of the offense" simply demands that the gravity of the crime be carefully considered as a factor in deciding whether to dismiss without prejudice. There are many crimes more serious than [the defendant's] income tax evasion, as well as many less serious. The district court reasonably considered this factor and properly balanced it with the other factors.

*United States v. Pierce*, 17 F.3d 146, 149 (6th Cir. 1994). The district court here properly refused to apply a mechanical test to judge the seriousness of Clark's alleged offenses. It carefully considered the gravity of Clark's alleged crimes. The court further noted that Clark's alleged frauds occurred over the span of more than a year and that Clark, therefore, allegedly persisted in illegal conduct

---

[1] In support, the district court cited *United States v. Pierce*, 17 F.3d 146, 148-49 (6th Cir. 1994) (upholding district court's determination that tax fraud is a serious offense); *United States v. Castle*, 906 F.2d 134, 138 (5th Cir. 1990) (bank fraud); *United States v. Kiszewski*, 877 F.2d 210, 214 (2d Cir. 1989) (perjury); *United States v. Melguizo*, 824 F.2d 370 (5th Cir. 1987) (failure to file currency transaction reports); *United States v. Peeples*, 811 F.2d 849, 850 (5th Cir. 1987) (wire fraud); and *United States v. Wollschlager*, 588 F. Supp. 1572, 1579 (N.D. Ill. 1984) (tax fraud), *aff'd*, 782 F.2d 1045 (7th Cir. 1985), *cert. denied sub nom. Wollschlager v. United States*, 479 U.S. 863 (1986).

over a span of time. The district court thus acted within its discretion in determining that Clark's offenses were serious for Speedy Trial Act purposes.

### b. Factor Two: Facts and Circumstances of the Case Which Led to the Dismissal

Clark argues that the second factor—consideration of the facts and circumstances of his case which led to the dismissal—weighs in favor of dismissal with prejudice given the "actual delay of this case from appearance to trial." However, as the Supreme Court recently explained, "[a]n assigned counsel's failure 'to move the case forward' does not warrant attribution of delay to the State," and "[j]ust as a State's deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the [State], so too should a defendant's deliberate attempt to disrupt proceedings be weighted heavily against the defendant." *Vermont v. Brillon*, 129 S. Ct. 1283, 1291-92 (2009) (final alteration in original) (citation and internal quotation marks omitted). When considering delays for which the government is responsible, we "look to whether the Government sought the . . . delays for ulterior purposes as well as whether the Government's failure to meet deadlines was repetitive, regular, and frequent with respect to this defendant." *Blevins*, 142 F.3d at 226.

Here, the overwhelming majority of the delays resulted from the conduct of Clark and his attorneys. Indeed, Clark does not argue that the government ever acted with bad faith to intentionally delay his trial. The district court did not abuse its discretion in rejecting Clark's self-serving, post hoc testimony that his prior attorneys' requests for continuances were contrary to his wishes. The court recognized that lawyers have "a professional obligation to pursue all possible outcomes for their clients" and refused to speculate as to the reasons for Carter's extensive plea bargaining. It noted that "Mr. Carter is an excellent attorney with the professional responsibility to investigate numerous and various forms of relief for his client." Indeed, "delays sought by counsel are

ordinarily attributable to the defendants they represent." *Brillon*, 129 S. Ct. at 1287. Moreover, the district court specifically expressed concern that Clark was attempting to use the Speedy Trial Act as both a sword and a shield. *See United States v. Willis*, 958 F.2d 60, 63-64 (5th Cir. 1992) (noting concern "that a defendant not be able to have it both ways by convincing the district court that delay was appropriate and then using that delay to obtain a dismissal").

The record further undermines Clark's claim that "all of the continuances in this case were contrary to [his] personal position that he wanted to proceed to trial as soon as possible." As the district court found, Clark's pro se motions to dismiss his appointed attorneys contributed to the delay, and one continuance resulted from Clark's back surgery. Furthermore, Clark did not file his first pro se motion to dismiss on Speedy Trial Act grounds until over a year after he was indicted. Additionally, notwithstanding Clark's claim that he did not want to plea bargain, given Clark's attorney's ethical duty of zealous representation, the attorney's requests for continuances to peruse the discovery, prepare for trial, and satisfy an ethical obligation by discussing possible pleas with the government should not weigh in favor of dismissal with prejudice on Speedy Trial Act grounds.

In light of these facts, the Supreme Court's recent instruction in *Brillon*, and Clark's failure to allege any governmental impropriety, the district court did not abuse its discretion in determining that this factor weighed in favor of dismissal without prejudice.

### c. Factor Three: Impact of a Reprosecution on the Administration of the Speedy Trial Act and on the Administration of Justice

The final Speedy Trial Act factor "encompasses three concerns: [t]he defendant's right to a timely trial; the deterrent effect of a prejudicial dismissal on the Government's repeated violations of the speedy trial requirements; and

the public's interest in bringing the accused to trial." *United States v. Mancia-Perez*, 331 F.3d 464, 469 (5th Cir. 2003). It also implicates "the presence or absence of prejudice to the defendant." *Id.*

Here, the district court found that, although "the public has a great interest in bringing to trial defendants who have been accused of serious crimes," this factor weighs in favor of dismissal with prejudice, given Clark's suggestions that "his own mental health has suffered as a result of prolonged prosecution, a condition which would worsen with reprosecution." Notably, the court never suggested that Clark suffered prejudice to his defense as a result of the delays.

After weighing each of the above factors, the district court determined that dismissal without prejudice was proper. Clark does not assert that any of the court's factual findings were clearly erroneous; rather, he merely disagrees with the court's decision to dismiss without prejudice given the facts it found. The Supreme Court has explained that a district court's decision on a Speedy Trial Act motion "should not lightly be disturbed . . . when the statutory factors are properly considered[] and supporting factual findings are not clearly in error." *Taylor*, 487 U.S. at 337. This is precisely the case here. Moreover, we have admonished that "[w]hen the charges are serious, courts should impose the sanction of dismissal with prejudice only for a correspondingly serious delay, especially in the absence of a showing of prejudice." *United States v. May*, 819 F.2d 531, 534 (5th Cir. 1987); *accord Mancia-Perez*, 331 F.3d at 470. Accordingly, we hold that the district court did not abuse its discretion in dismissing Clark's indictment without prejudice for violation of the Speedy Trial Act.

## B. Sufficiency of the Evidence Claim

Clark additionally challenges the sufficiency of the evidence supporting his conviction, arguing that the government failed to prove (1) that he actually

prepared the fraudulent tax returns or (2) that he knew that the returns were false. These claims lack merit.

## 1. Standard of Review

We have explained that our "assessment of the sufficiency of the evidence is deferential to the jury's verdict." *United States v. Holley*, 23 F.3d 902, 908 (5th Cir. 1994). "We will affirm the jury's decision if, 'viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt.'" *Id.* (quoting *United States v. Pruneda-Gonzalez*, 953 F.2d 190, 193 (5th Cir. 1992)); *accord Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc); *accord Holly*, 23 F.3d at 908. The factfinders "may properly 'use their common sense' and 'evaluate the facts in light of their common knowledge of the natural tendencies and inclinations of human beings.'" *United States v. Ayala*, 887 F.2d 62, 67 (5th Cir. 1989) (quoting *United States v. Henry*, 849 F.2d 1534, 1537 (5th Cir. 1988)). In arriving at its verdict, "[a] jury is free to choose among reasonable constructions of the evidence." *Bell*, 678 F.2d at 549. "[T]he standard for review of the sufficiency of the evidence to support the conviction is the same whether the evidence is direct or circumstantial." *United States v. Bryant*, 770 F.2d 1283, 1288 (5th Cir. 1985) (internal quotation marks omitted).

## 2. Analysis

26 U.S.C. § 7206(2) provides,

Any person who . . . [w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in

connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document . . . shall be guilty of a felony . . . .

Thus, a conviction under this section requires "proof that the defendant willfully aided, assisted, counseled, or advised another in the preparation or presentation under the internal revenue laws of a document that is fraudulent or false as to any material matter." *United States v. Clark*, 139 F.3d 485, 489 (5th Cir. 1998).

Notably, we have held that "[a] person need not actually sign or prepare a false tax return to either conspire to or actually aid and abet the filing of a false income tax return." *United States v. Williams*, 809 F.2d 1072, 1095 (5th Cir. 1987); *see also United States v. Coveney*, 995 F.2d 578, 588 (5th Cir. 1993) ("A person need not actually sign or prepare a tax return to aid in its preparation."); *United States v. Wolfson*, 573 F.2d 216, 225 (5th Cir. 1978) (noting that a defendant "does not have to sign or prepare the return to be amenable to prosecution" under 26 U.S.C. § 7206(2)). Rather, the express words of the statute provide that a defendant need only knowingly assist or advise the preparation or presentation of a fraudulent or false return. *See* 26 U.S.C. § 7206(2); *cf. id.* § 7206(1) (requiring a person to actually "make[] and subscribe[] any return" to be criminally liable under that subsection). As the Sixth Circuit has explained, § 7206(2) "relies on a theory of liability akin to complicity: it criminalizes an act that facilitates another person's crime when the act is undertaken willfully and with knowledge of the circumstances that make the other person's act illegal." *United States v. Searan*, 259 F.3d 434, 443 (6th Cir. 2001). "Liability under [this section] is not limited to return preparers; the statute reaches all knowing participants in the fraud." *United States v. Fletcher*, 322 F.3d 508, 514 (8th Cir. 2003) (citing cases).

18 U.S.C. § 287, the other statute of which Clark was convicted of violating, provides liability for

> [w]hoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent.

Thus, "to sustain a conviction under § 287, the government must prove: (1) that the defendant presented a false or fraudulent claim against the United States; (2) that the claim was presented to an agency of the United States; and (3) that the defendant knew that the claim was false or fraudulent." *United States v. Burns*, 162 F.3d 840, 850 (5th Cir. 1998).

Clark argues that there was insufficient evidence to sustain his convictions for violating either 26 U.S.C. § 7206(2) or 18 U.S.C. § 287 because a rational jury could not have found (1) that he actually prepared the fraudulent tax returns or (2) that he knew that the returns were false.

Notwithstanding Clark's arguments, there was more than sufficient evidence to sustain his convictions. As the district court succinctly explained in its order denying Clark's motion for judgment of acquittal,

> Contrary to Defendant's argument, the Court finds there was ample evidence sufficient to support a conviction in this case. The tax payer witnesses testified that Defendant presented himself as a tax return preparer, the witnesses believed he was a tax return preparer, they gave him information from which Defendant could prepare returns, and they discussed their returns or refunds with Defendant. Furthermore, the Government presented documentary evidence, accompanied by the testimony of experts in fingerprint identification and questioned documents examination. The Government also presented evidence of tracing electronically filed tax returns to Defendant.

The jury heard myriad evidence that Clark willfully participated in the preparation of the fraudulent tax returns. Multiple taxpayers testified that

Clark presented himself as a tax preparer, gave them specific tax advice, and agreed to prepare the tax returns at issue. One taxpayer even specifically recounted Clark's claim that he had "special knowledge" and a "special computer that nobody else has." An IRS document examiner—an expert in the field of questioned documents—testified that Clark filled out various documents that were submitted to the IRS on behalf of various taxpayers, obtained from taxpayers, or found in Clark's trash. Moreover, the government presented Clark's business cards, which he provided to several taxpayers and which described him as a "tax consultant" and Chief Executive of "The Tax People"; paper returns filed on behalf of several taxpayers with Clark's fingerprints and handwriting; returns electronically filed with software that Clark purchased and which contained Clark's email address; checks payable to Clark that were drawn on taxpayers' bank accounts and that Clark endorsed; and taxpayers' documents and records, blank tax forms, instructions concerning electronic tax filing, and drafts of tax returns "[t]hat had been worked on," which agents uncovered during a search of Clark's trash.

The jury likewise heard more than sufficient evidence that Clark knew that the returns were false. Taxpayers testified that they did not provide Clark with any information or documentation that could support the losses and deductions claimed on their returns. One taxpayer specifically testified that Clark listed a deduction on her return for which she had explicitly told him that she did not qualify. Another noted that, after Clark filed his return, Clark returned, unopened, an envelope with the taxpayer's receipts that the taxpayer had given Clark. The jury further heard Clark's denial that he knew any of the taxpayers despite overwhelming evidence to the contrary; Clark's denial that he possessed any of the taxpayers' documents, even though IRS agents later found numerous taxpayers' documents in his trash; and Clark's statements to Myers, when Myers told him about a false loss on his return, that (1) Clark knew "the

ins and outs," (2) "[w]e'll send it in and you won't have to worry about no taxes, you know?" and (3) "people in business shouldn't have to be paying all these taxes." Moreover, the jury heard evidence regarding the great similarity of the returns that Clark prepared, each of which claimed business losses despite many taxpayers not owning a business, and Clark's uncooperative responses to the IRS's audits.

Given this evidence and testimony—viewed in the light most favorable to the verdict—a reasonable jury could conclude that Clark willfully aided or assisted in, or procured, counseled, or advised the preparation or presentation of, fraudulent tax returns. A reasonable jury could also find that Clark knew that the returns were false and therefore also knowingly presented false claims to the government. Accordingly, we reject Clark's invitation to overturn the jury's verdict on sufficiency of the evidence grounds.

## C. Improper Admission of Evidence Claim

Finally, Clark contends that the district court abused its discretion when it admitted evidence that the IRS audited each of the taxpayers whose returns he prepared and that each filed amended returns or agreed to deficiency adjustments and were thus assessed additional tax liabilities. Clark argues that this evidence was irrelevant and unduly prejudicial.

### 1. Standard of Review

"We review the district court's evidentiary rulings for abuse of discretion." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *see also United States v. Franklin*, 561 F.3d 398, 404 (5th Cir. 2009) ("This court reviews evidentiary rulings on a heightened abuse of discretion basis."). "If we find an abuse of discretion, we review the error under the harmless error doctrine." *United States v. Sanders*, 343 F.3d 511, 517 (5th Cir. 2003). "Reversible error occurs only when the admission of evidence substantially affects the rights of a party." *United States v. Crawley*, 533 F.3d 349, 353 (5th Cir. 2008).

18

"In reviewing Rule 403 findings, we give 'great deference to the [trial] court's informed judgment and will reverse only after a clear showing of prejudicial abuse of discretion.'" *United States v. Peden*, 961 F.2d 517, 521 (5th Cir. 1992) (quoting *United States v. Rocha*, 916 F.2d 219, 241 (5th Cir. 1990)). Importantly, we have cautioned that "Rule 403 . . . is an extraordinary measure because it permits a trial court to exclude concededly probative evidence, and thus it should be used sparingly." *United States v. Caldwell*, 820 F.2d 1395, 1404 (5th Cir. 1987). Accordingly, "[w]hen reviewing this exercise of discretion, we must look at the evidence in the light most favorable to the proponent, maximizing its probative value and minimizing its prejudicial effect." *Id.* (internal quotation marks omitted).

### 2. Analysis

Federal Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible," except as otherwise excluded by the Constitution, law, or other rule of evidence. FED. R. EVID. 402. Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Rule 403 limits the admissibility of relevant evidence, explaining that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

Clark argues that evidence of the IRS's taxpayer audits and the taxpayers' subsequent amended returns and/or agreed deficiencies was irrelevant because his alleged crime had been completed prior to the audits. This claim is meritless. As the district court recognized, this evidence was probative of the material falsity of the returns Clark prepared. The court properly noted that materiality

19

is an element of the charged offenses and that the evidence was relevant to show the degree of falsity of the returns Clark prepared. The evidence was thus both relevant and probative to establish the materiality element of the offense.

Clark's further contention—without any supporting case law—that this evidence was unduly prejudicial is similarly meritless. He asserts that the evidence was unnecessary because the taxpayers testified regarding the alleged falsity of items listed on their returns, and that it was prejudicial because it created undue sympathy toward the taxpayers and adverse feelings toward him. He also argues that the taxpayers' agreements with the IRS regarding their tax deficiencies constitute some sort of improper legal opinion regarding the falsity of the returns. However, "[i]t is not enough simply to show that the evidence is prejudicial as virtually all evidence is prejudicial or it is not material. To warrant reversal, the prejudice must be unfair." *Rocha*, 916 F.2d at 239. This court has upheld even the direct expert testimony of an IRS agent that a tax form was invalid and that a tax deficiency existed. *See United States v. Townsend*, 31 F.3d 262, 270 (5th Cir. 1994). Given this precedent, and the discretion due the district court, we hold that the district court did not abuse its discretion in admitting this evidence.[2]

Finally, even if the trial court erred by admitting this evidence, such error was harmless given the overwhelming evidence of Clark's guilt. *See, e.g.*, *United States v. Martinez-Larraga*, 517 F.3d 258, 270 (5th Cir. 2008) (citing *United States v. Hasting*, 461 U.S. 499 (1983), and *Cotton v. Cockrell*, 343 F.3d 746, 752

---

[2] Clark additionally appears to claim, without case law support, that the challenged evidence was wrongfully admitted simply because the IRS deficiency assessments occurred after his offense was completed. Contrary to his assertion, as the Seventh Circuit has explained, "the fact that evidence is offered of events which occurred prior or subsequent to those charged in the indictment does not make the evidence objectionable," so long as it is not offered "to prove the character of a person in order to show that he acted in conformity therewith." *United States v. Baskes*, 649 F.2d 471, 480 (7th Cir. 1980).

20

(5th Cir. 2003)) (finding error harmless "[i]n light of the overwhelming evidence of the defendants' guilt").

## VI. CONCLUSION

For the reasons herein, we AFFIRM the judgment of the district court.

AFFIRMED.