## UNITED STATES

### v.

### James Christopher CLIFTON.

**Criminal Action No. 5:09–cr–21 (DCB) (LRA).**

United States District Court,
S.D. Mississippi,
Western Division.

Dec. 9, 2010.

Patrick A. Lemon, U.S. Attorney's Office, Jackson, MS, for United States.

Kathryn N. Nester, Omodare B. Jupiter, S. Dennis Joiner, Federal Public Defender, Jackson, MS, for James Christopher Clifton.

## MEMORANDUM OPINION AND ORDER

DAVID C. BRAMLETTE, District Judge.

This cause is before the Court on the defendant James Christopher Clifton ("Clifton")'s motion to dismiss the indictment (**docket entry 16**). Having carefully considered the motion and the Government's response, as well as the parties' original briefs and supplemental briefing as ordered by the Court, the Court finds as follows:

In its prior Opinion, the Court found that the defendant's motion to dismiss the indictment pursuant to the Federal Speedy Trial Act required further briefing, in particular on the issue of whether transportation time in excess of ten days is non-excludable under 18 U.S.C. § 3161(h)(1)(F) in this case, and, if so, whether such non-excludable time constitutes a violation of the Speedy Trial Act. The parties have completed briefing the issue, and have furnished additional evidentiary material to the Court.

## FACTS

On September 25, 2009, the defendant was arrested on a Complaint alleging violations of 18 U.S.C. § 912. He was brought before United States Magistrate Judge Linda R. Anderson for an initial appearance on September 28, 2009. The Government moved for detention and a competency evaluation. At an October 1, 2009, hearing on the Government's motion, the Magistrate Judge heard evidence and testimony, found probable cause to bind the defendant over to await action by the grand jury, and granted the Government's motion for detention and for a mental evaluation of the defendant.

On October 5, 2009, the Magistrate Judge entered an Order for Mental Health Evaluation, directing that the defendant be provided with a mental health evaluation in accordance with the provisions of Sections 4241, 4242[1], and 4247 of Title 18, United States Code. The order was submitted by the Government and approved as to form by counsel for the defendant. The order stated that "in accordance with 18 U.S.C. § 3161(h)(1)(A), any delay resulting from an examination to determine mental competency of the defendant is excluded for purposes of the Speedy Trial Act." Order of 10/5/09, p. 2 (docket entry 9). The order further stated, "The United States Marshal Service is directed to forthwith deliver the defendant to the designated facility for the conduct of the examination which has been ordered." *Id.*

In a Declaration filed by the Government in connection with its supplemental brief, James McIntosh states that he is the Supervisory Deputy U.S. Marshal in the Southern District of Mississippi, and sets forth the procedures followed by his office regarding medical evaluations. The Declaration states, in part:

The U.S. Magistrate will order a medical study on an inmate and the court order will be filed with the Clerk of the Court. The USMS [U.S. Marshal Service] criminal clerk will notify the Federal Bureau of Prisons [BOP] via email of the Magistrate's order for a medical study. The Bureau of Prison staff will process the order and the request is sent to the office of medical designations. The inmate is then designated to a Bureau of Prisons medical facility and the USMS is notified by fax or email. Upon receiving the inmate designation, the USMS criminal clerk will request movement for the inmate to be moved to the designated Bureau of Prisons Medical Center.

---

1. Title 18 U.S.C. § 4242(a) provides:

Upon the filing of a notice, as provided in Rule 12.2 of the Federal Rules of Criminal Procedure, that the defendant intends to rely on the defense of insanity, the court, upon motion of the attorney for the Government, shall order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c).

Defendant's counsel points out that no notice that the defendant intends to rely on an insanity defense has ever been filed, and that 18 U.S.C. § 4242 is therefore inapplicable.

McIntosh Declaration, p. 1 (Exhibit G–5 to Government's Supplemental Response to Defendant's Motion) (docket entry 29–5).

On October 20, 2009, an indictment was filed charging Clifton with three violations of 18 U.S.C. § 912. A Praecipe for Summons was issued by the Court that same day, returnable October 29, 2009.

Deborah G. Perkins attests, in her Declaration, that she is the Criminal Clerk for the USMS in Jackson, Mississippi, and that part of her duties include obtaining transportation for inmates to and from Bureau of Prisons (BOP) facilities. She states that Magistrate Judge Anderson's Order of October 5, 2009, was received by the USMS office on October 7, 2009. She further attests the following:

> Due to personal reasons . . . I was out of the office on October 15, 16, 19 and 26, 2009. A request for designation was sent on October 29, 2009 and Clifton was designated by the BOP (Bureau of Prisons) to the Miami FDC [Federal Detention Center] on November 4, 2009. I prepared a 106[2] on that date to get Clifton moved to the Miami FDC for evaluation. . . .

Perkins Declaration, p. 1 (Exhibit G–7 to Government's Supplemental Response to Defendant's Motion) (docket entry 29–7).

On November 23, 2009, John T. Rathman, the warden at FDC Miami, wrote to Magistrate Judge Anderson, stating that the defendant arrived at FDC Miami on November 17, 2009. Warden Rathman also requested an extension of the evaluation period to January 1, 2010.[3] This letter appears as Exhibit G–2 to Government's Supplemental Response to Defendant's Motion (docket entry 29–2).

On December 9, 2009, the Magistrate Judge issued an order extending the period for the mental health evaluation to January 10, 2010,[4] so that the defendant could be observed and evaluated, and stating that any delay resulting from the examination to determine mental competency of the defendant was excluded for purposes of the Speedy Trial Act. The Order appears as Exhibit G–3 to Government's Supplemental Response to Defendant's Motion (docket entry 29–3).

In his Declaration, James McIntosh states that, at the conclusion of a medical study ordered by a Magistrate Judge, "the Bureau of Prisons will notify the USMS by fax or email that the study is complete and the inmate can be returned to his or her district of origin." McIntosh Declaration, p. 1. On January 13, 2010, Rodolfo Buigas, Forensic Exam Coordinator at FDC Miami, sent a memo to Elena Garcia of Inmate Systems Management at FDC Miami advising that Clifton's case was completed and that he may be returned to his jurisdiction of origin. Also on January

---

**2.** A "106" is a Request for Prisoner Movement form used by the U.S. Marshal Service as part of the Justice Prisoner and Alien Transportation System (JPATS).

**3.** Title 18 U.S.C. § 4247(b) provides, in part: . . . For the purposes of an examination pursuant to an order under section 4241, 4244, or 4245, the court may commit the person to be examined for a reasonable period, but not to exceed thirty days, and under section 4242, 4243, or 4246, of a reasonable period, but not to exceed forty-five days, to the custody of the Attorney General for placement in a suitable facility. . . . The director of the facility may apply for a reasonable extension, but not to exceed fifteen days under section 4241, 4244, or 4245, and not to exceed thirty days under section 4242, 4243, or 4246, upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant.

**4.** Neither party offers any explanation for the discrepancy between the extension requested and the extension granted.

13, Garcia sent a fax to the Criminal Clerk of the U.S. Marshal's Office in Jackson, Mississippi, stating, "Inmate has completed his study at our institution. Please 106[5] as soon as possible back to your district." The fax also includes a copy of the Buigas memo. Fax from Elena Garcia to Criminal Clerk USMS, 1/13/2010 (Exhibit G–8 to Government's Supplemental Response to Defendant's Motion) (docket entry 29–8).

Linda M. Shepherd, Administrative Officer for USMS, indicates in her Declaration that she acts as Manager for the Mail Room for the Southern District of Mississippi Office, and that it is office policy for all faxes to be routed to the appropriate party on the day they are received. Shepherd states that neither she nor any of the staff of the U.S. Marshal's Office at 111 E. Capitol Street recall "receiving an incoming [fax] on January 13, 2010." Shepherd Declaration, pp. 1–2 (Exhibit G–6 to Government's Supplemental Response to Defendant's Motion) (docket entry 29–6).

On January 18, 2010, Warden Rathman wrote to Magistrate Judge Anderson, advising that the defendant's competency and sanity evaluation had been completed at FDC Miami. The letter also stated that the examiner's report was enclosed, and that copies were being mailed to the Government and to defendant's counsel. The report, also dated January 18, 2010, recommends that the defendant be found incompetent to stand trial. The letter indicates that copies of the cover letter and report were sent to Patrick A. Lemon, Assistant United States Attorney, and Omodare B. Jupiter, Assistant Federal Public Defender. The letter and accompanying report were filed on February 11, 2010, and appear as docket entry 14 (under seal). In his Declaration, Deputy Marshal McIntosh states the following:

1. On March 29, 2010, I emailed USMS criminal clerk Deborah Perkins regarding the status of James Clifton and his return to S/MS [Southern District of Mississippi].

2. On March 30, 2010, two follow up emails were sent to Deborah Perkins asking her to check with BOP for any unknown circumstances that may be delaying Clifton's return.

3. On March 31, 2010, I emailed Linda Shepherd who is the immediate supervisor of Deborah Perkins for assistance in gathering information on the status of inmate James Clifton.

4. On April 1, 2010, Deborah Perkins requested that James Clifton be returned to the Southern District of Mississippi.

5. On April 23, 2010, James Clifton returned to the Southern District of Mississippi.

McIntosh Declaration, pp. 1–2.

### LAW

■ As set forth in the Court's previous Opinion, the Speedy Trial Act provides, in relevant part:

In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs....

18 U.S.C. § 3161(c)(1). The Court has already found that the filing of the indictment on October 20, 2009, is the event that triggers the speedy trial clock in Clifton's

---

5. See footnote 2.

case. The speedy trial clock therefore commenced on October 21, 2009, the day following the filing of the indictment. *See United States v. Ortega–Mena*, 949 F.2d 156, 158 (5th Cir.1991) (indictment occurring after defendant's first appearance triggers speedy trial clock, and the day following the indictment is the first day of the seventy-day period).

There are several exclusions that operate to toll the running of the speedy trial clock. Two which bear on the issue presently under consideration are:

> (A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;
>
> . . .
>
> (F) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date of an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable[.]

18 U.S.C. § 3161(h)(1)(A) and (F) [6]. There is a split among the circuits regarding how to construe the interaction between these two provisions.

The minority view, as stated in *United States v. Vasquez*, 918 F.2d 329 (2nd Cir. 1990), is that § 3161(h)(1)(A) excludes from the speedy trial computation any delay relating to a competency evaluation, including delays under § 3161(h)(1)(F) resulting from transportation of the defendant to and from the place of examination, including delays in excess of ten days, even if the delay is unreasonable. *Id.* at 333.

The majority view, as stated in *United States v. Noone*, 913 F.2d 20 (1st Cir.1990), is that delays in transportation under § 3161(h)(1)(F) are treated separately from the general competency evaluation provision of § 3161(h)(1)(A), and that delays in transportation in excess of ten days are presumed unreasonable and are not excluded from the speedy trial computation, as provided in subparagraph (F). In reaching this conclusion, the First Circuit found that "[a]ny other interpretation would render mere surplusage the specific reference in subparagraph (h)(1)[ (F) ] to transportation 'to and from places of examination or hospitalization.'" *Id.* at 25 n. 5.[7]

The Ninth Circuit, in *United States v. Taylor*, 821 F.2d 1377 (9th Cir.1987), *rev'd on other grounds*, 487 U.S. 326, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988), also held that § 3161(h)(1)(F) controls, and rejected the Government's argument that the pre-

---

**6.** The Speedy Trial Act was amended effective October 13, 2008. The amendment eliminated two provisions under 18 U.S.C. § 3161(h)(1) and renumbered other provisions without substantive change. The provision that previously appeared at § 3161(h)(1)-(A) was neither changed nor renumbered. The provision that previously appeared at § 3161(h)(1)(H) was not changed but was renumbered as § 3161(h)(1)(F). Unless otherwise noted, all citations in this Opinion are to the amended version of the Act as codified in the 2010 Supplement to the United States Code.

**7.** In a recent case involving statutory construction of a different subparagraph,

§ 3161(h)(1)(D), the Supreme Court noted that "'[g]eneral language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment,'" *Bloate v. United States*, —— U.S. ——, ——, 130 S.Ct. 1345, 1354, 176 L.Ed.2d 54 (2010) (quoting *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704 (1932)); and that "'a statute ought, upon the whole, to be construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *Id.* at 1355 (quoting *Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)).

sumption of unreasonableness in subparagraph (F) can be rebutted by a showing of diligent effort on the part of the Government. The court stated that "delays [in transportation] to accommodate the [Government], in its desire to effect economical transportation of prisoners in larger groups, are not excludable under the Act." *Id.* at 1384.

In *United States v. Castle,* 906 F.2d 134 (5th Cir.1990), the Fifth Circuit adopted the majority view, citing *Taylor* and noting that:

> The Ninth Circuit relied in part on the House Report on the Speedy Trial Act legislation, wherein the committee rejected the argument that additional time should be allowed to permit economical transportation of prisoners, stating:
>
>> The Committee cannot conclude that inconvenience to the United States marshals of the minimal expense of transporting prisoners is an excuse for delaying the arraignment of a defendant.

*Id.* at 138, quoting *Taylor,* 821 F.2d at 1384 n. 10 (quoting H.Rep. No. 1508, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S. Code Cong. & Admin.News 7401, 7423–24). The Fifth Circuit also cited with approval *United States v. Jervey,* 630 F.Supp. 695 (S.D.N.Y.1986), wherein "the district court held that the presumption of § 3161(h)(1)[ (F) ] applies 'unless some extraordinary event occurred in the case to make compliance with the directions of Congress unfeasible. . . . [O]rdinary institutionalized delay is not an excuse.'" *Id.* (quoting *Jervey,* 630 F.Supp. at 697).

Ordinarily, pursuant to the statute, the Order entered on October 5, 2009, directing the Marshal Service to deliver the defendant to the designated facility for a mental health evaluation, would trigger the transportation period under § 3161(h)(1)(F). However, because the defendant was not indicted until October 20, 2009, the speedy trial clock did not commence until October 21, 2009.[8] *See United States v. Lopez–Valenzuela,* 511 F.3d 487, 489 (5th Cir.2007).

█ The Court therefore uses October 21, 2009, as the first day of the transportation period under § 3161(h)(1)(F). In counting the ten days, weekends and holidays are not included, nor is the last day of the period if it falls on a weekend or holiday. *See United States v. Hernandez–Amparan,* 600 F.Supp.2d 839, 841 n. 1 (W.D.Tex.2009) (applying Fed.R.Crim.P. 45 since the period is less than eleven days). The last day of excludable time under § 3161(h)(1)(F) was November 3, 2009. Clifton arrived at FDC Miami on November 17, 2009; therefore, the period of time expended to transport the defendant to FDC Miami included fourteen days of non-excludable time.

As for the return trip, the Court finds that the first day of the transportation period was January 14, 2010, the day after the January 13 notice to the Marshal Service from Elena Garcia at FDC Miami, advising that Clifton's evaluation was completed and directing the Marshal Service to return the defendant to the Southern District of Mississippi "as soon as possible." Fax from Elena Garcia to Criminal Clerk USMS, 1/13/2010. *See United States v. Garrett,* 45 F.3d 1135, 1140 (7th Cir.1995) ("We hold that where, as here, no order directing the transportation of a defendant exists, the date upon which the defendant was authorized for transportation by the appropriate prison official con-

---

**8.** In its prior Opinion, the Court incorrectly found that the indictment was filed on October 19, 2009, and that the speedy trial clock commenced on October 20, 2009. The error is hereby corrected.

trols the application of § 3161(h)(1)[ (F) ].").

[3] Using January 14, 2010, as the first day of the transportation period under § 3161(h)(1)(F), the Court finds that the last day of excludable time, under the statute and Fed.R.Crim.P. 45, was January 28, 2010, excluding weekends and holidays. Clifton arrived back in the Southern District of Mississippi on April 23, 2010; therefore, the period of time expended to transport the defendant from FDC Miami to the Southern District of Mississippi included eighty-five days of non-excludable time. When combined with the non-excludable time from the initial trip, there is a total of ninety-nine days of non-excludable time.

The Court further finds that the Government has not shown any extraordinary event that occurred to make compliance with § 3161(h)(1)(F) unfeasible, but has shown only ordinary institutionalized delay. Therefore, the total non-excludable time exceeds seventy days, and under the Speedy Trial Act the indictment against the defendant must be dismissed.

■ The Court has inquired of the parties whether dismissal, if appropriate, should be with or without prejudice. The Speedy Trial Act provides that "[i]n determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1).

"[T]he decision whether to dismiss a complaint under the Speedy Trial Act with or without prejudice is 'entrusted to the sound discretion of the district judge and . . . no preference is accorded to either kind of dismissal.'" *United States v. Melguizo,* 824 F.2d 370, 371 (5th Cir.1987) (quoting *United States v. Salgado–Hernandez,* 790 F.2d 1265, 1267 (5th Cir. 1986)). "Although not as harsh a sanction as dismissal with prejudice, dismissal without prejudice is meaningful because it, *inter alia,* forces the Government to obtain a new indictment if it decides to reprosecute as well as exposes the prosecution to dismissal on statute of limitations grounds." *United States v. Blevins,* 142 F.3d 223, 225 (5th Cir.1998).

■ As for the first factor, the defendant argues that the charged offense is minimally serious because it did not involve a violent act and the maximum penalty of confinement is three years. The Government points out that the defendant is charged with three counts of impersonating a federal officer, each of which carries a maximum term of incarceration of three years. In *United States v. Clark,* 577 F.3d 273 (5th Cir.2009), the defendant was charged with felony tax fraud. The Fifth Circuit quoted with approval the district court's finding that "various courts have classified nonviolent crimes involving mendacity as serious offenses for speedy trial purposes." *Id.* at 282 (footnote and citations omitted). The Fifth Circuit also quoted a Sixth Circuit tax fraud case:

> While a primary method of judging the seriousness of an offense is by comparing it to other crimes, that does not mean that a mechanical test based upon the guidelines must be used to label an offense "serious" or "not serious." Rather, the Speedy Trial Act's requirement that courts must consider "the seriousness of the offense" simply demands that the gravity of the crime be carefully considered as a factor in deciding whether to dismiss without prejudice. There are many crimes more serious than [the defendant's] income tax evasion, as well

as many less serious. The district court reasonably considered this factor and properly balanced it with the other factors.

*United States v. Pierce,* 17 F.3d 146, 149 (6th Cir.1994) (quoted in *Clark,* 577 F.3d at 282). This Court finds that, although many crimes are more serious, the charges against Clifton are sufficiently serious for Speedy Trial Act purposes.

■ The defendant argues that the second factor—consideration of the facts and circumstances that led to the dismissal—weighs in favor of dismissal with prejudice because "the Government has provided no reasons for failing to ensure that Mr. Clifton was brought to trial during the seventy-day period mandated by the Speedy Trial Act." In its response, the Government acknowledges that it has the burden to explain the violation, and that the defendant may counter with a showing of pretext. *See United States v. Mancia–Perez,* 331 F.3d 464, 469 (5th Cir.2003) (citing *United States v. May,* 819 F.2d 531, 533 (5th Cir.1987)).

The Government begins by showing negligence on the part of the Marshals Service. It is established that the Marshal Service received Magistrate Judge Anderson's Order of October 5, 2009, on October 7, 2009; however, a request for designation was not sent to the BOP until October 29, 2009. The BOP responded on November 4, 2009. There was another delay, and Clifton did not reach FDC Miami until November 17, 2009. The delays are attributable to USMS staff and in no way indicate any ulterior purpose, such as an attempt to hamper the defense by delaying the trial.

Regarding the return trip, it is established that FDC Miami staff sent a fax to the Marshal Service requesting transportation on January 13, 2010; however, the Marshal Service has no record of having

received the fax, and did not request transportation until April 1, 2010, after Deputy Marshal McIntosh had inquired into Clifton's status. As with the initial trip, there was further delay, and Clifton did not reach the Southern District of Mississippi until April 23, 2010. Again, the delays are attributable to negligence, and there is no indication of any ulterior purpose. In his rebuttal brief, Clifton fails to allege any governmental impropriety. The Court therefore finds that this factor weighs in favor of dismissal without prejudice.

■ The third factor "encompasses three concerns: [t]he defendant's right to a timely trial; the deterrent effect of a prejudicial dismissal on the Government's repeated violations of the speedy trial requirements; and the public's interest in bringing the accused to trial." *Mancia–Perez,* 331 F.3d at 469. It also implicates "the presence or absence of prejudice to the defendant." *Id.* The defendant argues first that dismissing his case without prejudice would reward the Government "for ignoring Mr. Clifton's rights and liberties." The Court finds that in this case, dismissal without prejudice would not "reward" the Government. As noted above, though not as harsh a sanction as dismissal with prejudice, dismissal without prejudice is a sanction. In the absence of governmental impropriety, it is the appropriate sanction.

Second, the defendant argues that since he has been in federal custody since September 25, 2009, he has already served any possible sentence he may receive. As discussed with regard to the first factor, the defendant, if found guilty, would face the possibility of substantially more than an eighteen-month sentence. While the Court cannot predict the possible sentence with certainty, it does note that the defendant could face enhancements particularly with regard to Count II, which includes

782

allegations that the impersonation by the defendant was to facilitate another offense, namely the commission of a fraud. *See United States v. Williams*, 25 Fed.Appx. 175 (4th Cir.2002). In addition, the defendant has failed to demonstrate prejudice.

Finally, the Court is to consider "any other relevant factors in the particular case not expressly identified by the statutory provisions." *United States v. Blackwell*, 12 F.3d 44, 48 (5th Cir.1994). Clifton's competency determination is currently before the Court on Magistrate Judge Anderson's Report and Recommendation, which the parties intend to argue but have not done so pending the outcome of the speedy trial motion. The Report and Recommendation finds:

> The preponderance of the evidence confirms that Defendant is presently suffering from a mental disease or defect which renders him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. He should be committed to the custody of the Attorney General, who shall hospitalize him for treatment in a suitable facility, as provided in 18 U.S.C. § 4241(d).

Report and Recommendation, p. 9. *See also* Forensic Evaluation Report of Dr. Lisa Feldman.

The Court does not presume to predict the outcome of the competency determination presently before it. However, the Court recognizes that if the defendant is found to be incompetent, further time could be required attempting to restore him to competency (which time would be excludable under the speedy trial clock). When combined with the statutory factors discussed above, the Court finds that this factor weighs in favor of dismissal without prejudice.

Accordingly,

IT IS HEREBY ORDERED that the defendant James Christopher Clifton's motion to dismiss the indictment (**docket entry 16**) is GRANTED, and the indictment against the defendant is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.